J.S13041/16

2016 PA Super 112

IN RE: C.M.C., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
APPEAL OF: C.L.C., MOTHER :
:
:
: No. 1432 WDA 2015

Appeal from the Decree Entered August 18, 2015
in the Court of Common Pleas of Blair County Orphans' Court
at No(s): 2015 AD 32

BEFORE: LAZARUS, STABILE, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.: **FILED MAY 26, 2016**

C.L.C. ("Mother") appeals from the decree entered on August 18,
2015, voluntarily terminating her parental rights to her dependent, male
child, C.M.C. ("Child"), born in March of 2009, pursuant to the Adoption Act,
23 Pa.C.S. §§ 2501-2558, so that he may be adopted by his paternal
grandmother, D.S. ("Paternal Grandmother"), who resides in Alabama with
Child.[1]  We vacate and remand.

Father resides in Towson, Maryland.  N.T., 8/18/15, at 18-19.  Mother
resides in Altoona, Pennsylvania.  *Id.*  After a special relief hearing, on May
25, 2010, the court ordered that G.C., Child's maternal grandfather
("Maternal Grandfather"), have legal and physical custody of Child.  *Id.* at

---

[*] Former Justice specially assigned to the Superior Court.

[1] In the decree dated and entered on August 18, 2015, the trial court also
voluntarily terminated the parental rights of B.A.R.C., Child's natural father
("Father").  Father did not file an appeal and is not a party to the present
appeal.

17.  On July 29, 2014, Blair County Children, Youth and Families ("BCCYF") received a phone call alleging that Maternal Grandfather was neglecting Child; it implemented BCCYF services for the family that same day.  *Id.* at 15-17.  On August 7, 2014, BCCYF obtained an emergency protective custody order, which directed BCCYF would have legal and physical custody, removed Child from Maternal Grandfather's home, and placed Child in foster care.  *Id.* at 17.

On October 3, 2014, the trial court adjudicated Child dependent under Section 6302 of the Juvenile Act, removed Child from Maternal Grandfather's home, directed that BCCYF have legal and physical custody, and stated Child's placement would remain in foster care.[2]  *Id.*  On December 24, 2014, the trial court entered a four-month permanency review order maintaining BCCYF's legal and physical custody of Child and his placement with his foster parents.  On February 2, 2015, the trial court entered a permanency order that changed Child's permanency goal to adoption and maintained his placement with his foster parents.  Subsequently, on June 10, 2015, the trial court modified Child's placement from foster care home to the home of Paternal Grandmother in Alabama.

On July 31, 2015, BCCYF filed a petition for **involuntary** termination of the parental rights of Mother and Father pursuant to 23 Pa.C.S. §

---

[2] 42 Pa.C.S. § 6302.

2511(a)(1), (2), (8), and (b). On August 18, 2015, the trial court held a joint twelve-month permanency review hearing and hearing on the involuntary termination petition. At the commencement of the hearing, Father and Maternal Grandfather were present in the courtroom and Paternal Grandmother was present via telephone, but Mother was not present. N.T., 8/18/15, at 1, 6-7. Attorney Justin Witt (representing BCCYF), Attorney David Axinn (representing Father), Attorney Aimee Willett (guardian *ad litem* ("GAL")), and Attorney Traci Naugle (representing Mother), were also in the courtroom. *Id.* at 1.

At the hearing, Father voluntarily relinquished his parental rights. *Id.* at 1-8. Father's counsel, BCCYF's counsel, and the trial court conducted a colloquy of Father about his decision. *Id.* at 2-6. Father indicated that he understood Paternal Grandmother wished to adopt Child and raise Child in Alabama, supported the adoption, and believed it was in Child's best interests. *Id.* at 3. Subsequently, Mother's counsel, in Mother's absence, stipulated to some of the facts averred in the involuntary termination petition, specifically the names, dates, and ages of the individuals, but did not stipulate to the remainder. *Id.* at 7-8.

BCCYF first presented the testimony of Krista Gorman, who is employed by Kids First in the New Steps Program in Altoona, Pennsylvania. *Id.* at 9. Ms. Gorman testified about Mother's interaction with reunification services and the visits between Mother and Child. *Id.* at 9-15. Ms. Gorman

testified that she would support BCCYF's petition to involuntarily terminate Mother's parental rights. *Id.* at 15.

Next, BCCYF questioned Rachel Steinbugl, a BCCYF caseworker assigned to Child beginning in June of 2015. *Id.* at 15-16. Ms. Steinbugl testified as to the involvement of BCCYF with Child and his parents. *Id.* at 16-17. During Ms. Steinbugl's testimony, at 9:50 a.m., Mother arrived in the courtroom, and the trial court granted a brief recess for her to speak with her legal counsel. *Id.* at 17-18. When the court resumed proceedings on the record, counsel for BCCYF stated that Mother was willing to **voluntarily** relinquish her parental rights. *Id.* at 18.

On the record, Mother's counsel and the trial court asked Paternal Grandmother if she adopted Child, would she allow Mother two telephone calls per week with Child and mutually agreed-upon visitation. *Id.* Paternal Grandmother agreed to the requested telephone calls and visitation. *Id.*

Mother's counsel then conducted a colloquy of Mother regarding her decision to voluntarily relinquish her parental rights, as follows:

> By Attorney Naugle: And is it your intention here today to consent to termination of your parental rights?
>
> By [Mother]: Yes.
>
> By Attorney Naugle: With regard to [Child]?
>
> By [Mother]: Right.
>
> By Attorney Naugle: And [Child] is your biological son?
>
> By [Mother]: Yes he is.

By Attorney Naugle: Okay and do you understand that if you consent to termination of your parental rights today that is final[;] parental rights and responsibilities as to [Child] will be forever severed as of today?

By [Mother]: Yes.

By Attorney Naugle: And you understand that currently [Child] is residing with [D.S.] the paternal grandmother?

By [Mother]: Yes.

By Attorney Naugle: And is it your understanding that she is willing to adopt [Child]?

By [Mother]: Right.

By Attorney Naugle: And you understand that even though that is the understanding and expectation you cannot make your consent to terminate parental rights contingent upon that[,] correct?

By [Mother]: Yes.

By Attorney Naugle: Okay and you're not under the influence of any drugs or alcohol today?

By [Mother]: No, ma'am.

By Attorney Naugle: Okay this is your own choice and your own decision?

By [Mother]: Yes.

By Attorney Naugle: Okay anything else that you feel the Judge should know about your relationship with [Child]?

By [Mother]: Nope.

N.T., 8/18/15, at 19-21.

Counsel for BCCYF asked Mother whether she had an opportunity to consult with her attorney regarding her decision and whether she felt comfortable with her decision. *Id.* at 21. Mother responded, "Yes, sir." *Id.* The trial court then stated on the record that Mother's parental rights were terminated. *Id.* When Maternal Grandfather attempted to ask Mother a question, the trial court permitted Mother to provide the reason for her decision:

> By [Mother]: I think it's best for [Child]. I cannot give him what a parent can right now. I am struggling myself, and he's making a lot more progress than what he has with [Paternal Grandmother] so I believe that's where my son should be.

N.T., 8/18/15, at 22.

The trial court then continued on to the permanency review portion of the proceeding. *Id.* The GAL stipulated that if called to testify, the BCCYF witnesses would testify consistent with the contents of the twelve-month permanency review petition, without admitting to the veracity of the facts set forth in the petition. *Id.* at 23. Counsel for BCCYF presented the testimony of Paternal Grandmother regarding Child's status in her home in Alabama, where he resides. *Id.* at 24. Paternal Grandmother testified that Child was doing well in her home. *Id.* at 24-29. She stated she intends to adopt Child, and the adoption proceedings would take place in Blair County, Pennsylvania. *Id.* at 27.

On that same date, August 18, 2015, the trial court entered the decree voluntarily terminating the parental rights of Mother and Father pursuant to the Adoption Act, finding the requirements of "Section 2501 et seq. relative to voluntary relinquishment of parental rights have been satisfied", and "All requirements of the Act pertaining to notice have been met". Decree, 8/18/15, at 1-2. The trial court specifically found that clear and convincing evidence had been presented to support the voluntary relinquishment of Mother's and Father's parental rights pursuant to the Adoption Act. *Id.* at 2.[3] On September 17, 2015,[4] Mother timely filed her notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In her brief on appeal, Mother raises the following question:

> Where a verbal relinquishment of parental rights was conditioned upon the entry of a post adoption contact agreement, was it knowing and voluntary and was it a violation of the statute?

---

[3] In an order dated August 18, 2015, and entered on August 19, 2015, the trial court ordered legal and physical custody to remain with BCCYF, and the placement to continue with Paternal Grandmother in Alabama, with the goal to remain adoption, noting that both parents had voluntarily relinquished their parental rights on that same date. Further, the trial court stated that Paternal Grandmother was willing to maintain contact between the parents and Child for his well-being and development.

[4] On that same date, Mother filed a motion for reconsideration. The trial court did not rule upon the motion.

Mother's Brief at 4.[5]

We adhere to the following standard of review:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; [***In re:***] ***R.I.S.***, [614 Pa. 275, 284, 36 A.3d 567, 572 (2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, [613 Pa. 371, 455], 34 A.3d 1, 51 (2011); ***Christianson v. Ely***, 575 Pa. 647[, 654-55], 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***
>
> As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and

---

[5] Mother waived any challenge to the permanency review order entered on August 19, 2015, by failing to raise such a challenge in her concise statement and brief. ***See Krebs v. United Refining Co. of Pa.***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both the concise statement of errors complained of on appeal and the Statement of Questions Involved in his or her brief on appeal).

termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161[, 165], 650 A.2d 1064, 1066 (1994).

*In re S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

With regard to revocation of consent to adoption in relation to a voluntary relinquishment of parental rights, we review the trial court's determination for an abuse of discretion or legal error. *In re K.G.M.*, 845 A.2d 861, 863 (Pa. Super. 2004). We stated,

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*Id.* (quoting *In re A.J.B.*, 797 A.2d 264, 266 (Pa. Super. 2002)); *accord In re A.M.B.*, 812 A.2d 659, 662 (Pa. Super. 2002); *In re J.F.*, 862 A.2d 1258, 1260 (Pa. Super. 2004) (citing *In re A.M.B.* and *In re A.J.B.* for the proposition that we must "determine if the record is free from legal error and if the factual findings are supported by the evidence.").

In her brief on appeal, Mother states that she appeared at the hearing on the involuntary termination petition, and testified that it was her wish to relinquish her parental rights to Child. Mother asserts that Paternal Grandmother, as Child's adoptive resource, testified that she would agree to allow for specific continuous contact between Child and Mother. Mother claims that her relinquishment was contingent upon Paternal Grandmother's promise of continuous contact. Mother further asserts that subsequent to the hearing on August 18, 2015, her counsel attempted to have Paternal Grandmother enter a written agreement in conformity with Act 101 of 2010, 23 Pa.C.S. §§ 2731-2742, but Paternal Grandmother refused. Mother, thus, argues that her relinquishment of her parental rights was not knowing and voluntary. Mother complains that the trial court did not conduct the termination in compliance with Sections 2501 and 2503. Moreover, Mother contends that she did not file a petition to confirm her relinquishment, which would have allowed her time to consider and an opportunity to revoke her relinquishment. Instead, the trial court, in relation to an involuntary termination petition hearing, entered a voluntary relinquishment decree on

the same day, terminating her parental rights. Mother contends that the trial court's termination decree did not comply with the Adoption Act and should be reversed.

In its Opinion filed pursuant to Pa.R.A.P. 1925(a)(2)(i), the trial court rejected Mother's argument, stating:

> At the six-month Permanency Review Hearing for [Child], the [m]other declined to testify; however, her attorney stated in the record that Mother desired to relinquish her rights to pursue adoption with the [p]aternal [g]randmother in Alabama and intended to move closer to him in that region. (Dependency Review, February 2, 2015 p.4). This decision by the [m]other set the stage for the 18-Month [sic] Permanency Review Hearing and simultaneous hearing on the Petition for Termination of Parental Rights. At that proceeding on August 18, 2015, Father voluntarily relinquished his rights. Mother arrived one hour late to the proceeding and the [c]ourt recessed to allow for private attorney client discussion. Upon their return to the courtroom, Mother indicated her willingness to voluntarily relinquish her parental rights. (Dependency Review, August 18, 2015, p. 18-21)
>
> Although the hearing had commenced on the <u>Petition for Involuntary Termination of Parental Rights</u>, after Mother voluntarily relinquished her parental rights, the [c]ourt had a basis to terminate the rights of the [m]other and then proceed to conduct the dependency hearing only.
>
> The transcript supports the fact that Mother's attorney colloquied Mother's understanding that although her son [Child] resided in Alabama with his [p]aternal [g]randmother, which was the intended adoptive home, her relinquishment was not contingent on such fact (Dependency Review, August 18, 2015 p. 20). Additionally, Mother stated her reason for her relinquishment was "I think it's best for [Child]. I cannot give him what a parent can right now. I am struggling myself and he's making a lot more progress than what he has with [Paternal Grandmother,] and I believe that's

where by [sic] son should be". (Dependency Review, August 18, 2015 p. 22)

Additionally, Mother did not make efforts to negotiate an Act 101 agreement which is now waived.

We also note that before Mother arrived at the termination proceedings, the testimony established that [Child] entered dependency and placement on August 7, 2014 after removal from the home of his [m]aternal [g]randfather, [G.C.]. Reunification efforts however began with Mother, not grandfather, on November 25, 2014 (after a referral to the Kids First Agency on September 29, 2014). Reunification terminated at the end of January [of 2015] at Mother's request. Mother never established stable housing and had significant problems finding mental stability. (Dependency Review, August 18, 2015 p. 9-15). This back story helped to inform the [c]ourt of the credibility of Mother's voluntary relinquishment.

Trial Ct. Op., 10/27/15, at 1-3. We agree Mother is entitled to relief.

This Court has stated that Chapter 25 of the Adoption Act concerns "proceedings prior to petitions to adopt." We explained, "Subchapter A, titled "Voluntary Relinquishment", is distinguishable from Subchapter B, "Involuntary Termination", indicating the statutory intent to treat the matters separately. *In re A.M.B.*, 812 A.2d at 668.

Here, BCCYF filed the petition to involuntarily terminate Mother's parental rights pursuant to Subchapter B of the Adoption Act, specifically, Section 2512(a)(2). Section 2512 states as follows:

**§ 2512. Petition for involuntary termination**

**(a) Who may file.—**A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

(1) Either parent when termination is sought with respect to the other parent.

(2) An agency.

(3) The individual having custody or standing in loco parentis to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

(4) An attorney representing a child or a guardian ad litem representing a child who has been adjudicated dependent under 42 Pa.C.S. § 6341(c) (relating to adjudication).

23 Pa.C.S. § 2512.

Section 2513 provides for the hearing on the involuntary termination petition.

### § 2513. Hearing

**(a) Time.**—The court shall fix a time for hearing on a petition filed under section 2512 (relating to petition for involuntary termination) which shall not be less than ten days after filing of the petition.

**(b) Notice.**—At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated. . . .

\*　　\*　　\*

**(d) Decree.**—After hearing, which may be private, the court shall make a finding relative to the pertinent provisions of section 2511 (relating to grounds for involuntary termination) and upon such finding may enter a decree of termination of parental rights.

23 Pa.C.S. § 2513.

When an agency has filed a petition for involuntary termination of parental rights, the agency bears the burden of proving one or more of the factors set forth in Section 2511 at the hearing on the petition. *In re R.N.J.*, 985 A.2d at 276; *see In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one Subsection of Section 2511(a)). This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but, under Section 2511(b), the focus is on the child. *In re C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

In contrast, Subchapter A of the Adoption Act provides for voluntary relinquishment of parental rights under Sections 2501 and 2502. Section 2501 provides as follows:

> **§ 2501. Relinquishment to agency**
>
> **(a) Petition.—**When any child under the age of 18 years has been in the care of an agency for a minimum period of three days or, whether or not the agency has the physical care of the child, the agency has received a written notice of the present intent to transfer to it custody of the child, executed by the parent, the parent or parents of the child may petition the court for permission to relinquish forever all parental rights and duties with respect to their child.
>
> **(b) Consents.—**The written consent of a parent or guardian of a petitioner who has not reached 18 years of age shall not be required. The consent of the agency to accept custody of the child until such time as the child is adopted shall be required.

23 Pa.C.S. § 2501.

Section 2502 provides as follows:

> **§ 2502. Relinquishment to adult intending to adopt child**
>
> **(a) Petition.—**When any child under the age of 18 years has been for a minimum period of three days in the exclusive care of an adult or adults who have filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt), the parent or parents of the child may petition the court for permission to relinquish forever all parental rights to their child.
>
> **(b) Consents.—**The written consent of a parent or guardian of a petitioner who has not reached 18 years of age shall not be required.  The adult or adults having care of the child shall file a separate consent to accept custody of the child.

23 Pa.C.S. § 2502.

Section 2503 provides for a hearing on the voluntary relinquishment petition as follows:

> **§ 2503. Hearing**
>
> **(a) General rule.—**Upon presentation of a petition prepared pursuant to section 2501 (relating to relinquishment to agency) or section 2502 (relating to relinquishment to adult intending to adopt child), the court shall fix a time for hearing which shall not be less than ten days after the filing of the petition.  The petitioner must appear at the hearing.
>
> **(b) Notice.—**
>
> (1) At least ten days' notice of the hearing shall be given to the petitioner. . . .
>
> *     *     *
>
> **(c) Decree.—**After hearing, which shall be private, the court may enter a decree of termination of parental rights

in the case of their relinquishment to an adult or a decree of termination of parental rights and duties, including the obligation of support, in the case of their relinquishment to an agency.

23 Pa.C.S. § 2503.

Section 2504 provides an alternative procedure for relinquishment as follows:

### § 2504. Alternative procedure for relinquishment

**(a) Petition to confirm consent to adoption.—**If the parent or parents of the child have executed consents to an adoption, upon petition by the intermediary or, where there is no intermediary, by the adoptive parent, the court shall hold a hearing for the purpose of confirming a consent to an adoption upon expiration of the time period under section 2711 (relating to consents necessary to adoption). The original consent or consents to the adoption shall be attached to the petition.

**(b) Hearing.—**Upon presentation of a petition filed pursuant to this section, the court shall fix a time for a hearing which shall not be less than ten days after filing of the petition. Notice of the hearing shall be by personal service or by registered mail. . . . Notice of the hearing shall be given to the other parent or parents, to the putative father whose parental rights could be terminated pursuant to subsection (c) and to the parents or guardian of a consenting parent who has not reached 18 years of age. The notice shall state that the consenting parent's or putative father's rights may be terminated as a result of the hearing. After hearing, which shall be private, the court may enter a decree of termination of parental rights in the case of a relinquishment to an adult or a decree of termination of parental rights and duties, including the obligation of support, in the case of a relinquishment to an agency.

23 Pa.C.S. § 2504.

Section 2505 of the Adoption Act provides for counseling for the parent voluntarily relinquishing his or her parental rights under Section 2503 or 2504, as follows:

**§ 2505. Counseling**

\* \* \*

**(c) Court referral.—**Prior to entering a decree of termination of parental rights pursuant to section 2503 (relating to hearing) or 2504 (relating to alternative procedure for relinquishment), if the parent whose rights are to be terminated is present in court, the court shall inquire whether he or she has received counseling concerning the termination and the alternatives thereto from an agency or from a qualified counselor listed by a court pursuant to subsection (b). If the parent has not received such counseling, the court may, with the parent's consent, refer the parent to an agency or qualified counselor listed by a court pursuant to subsection (b) for the purpose of receiving such counseling. In no event shall the court delay the completion of any hearing pursuant to section 2503 or 2504 for more than 15 days in order to provide for such counseling.

23 Pa.C.S. § 2505.

Thus, the Adoption Act provides two alternative procedures for a parent to voluntarily relinquish his or her parental rights: (1) by the parent filing a petition to relinquish parental rights pursuant to Sections 2501 or 2502; or (2) by the adoptive parent filing a petition to confirm a birth parent's consent to adoption under Section 2504. Pursuant to the procedures set forth in Sections 2501 and 2502, the natural parent first files a petition in the trial court seeking permission to permanently relinquish his or her parental rights to the minor child. The Adoption Act requires the trial

- 17 -

court to hold a hearing, and for the relinquishing parent to ratify his or her consent to termination, no less than ten days after the petition is filed. ***See*** 23 Pa.C.S. § 2503(a). The comment to Section 2503 explained:

> Subsection (a) is amended to make the petitioner's appearance at the hearing mandatory. The petitioner's in-court ratification of consent assures due process requirements in view of the finality of the termination decree as to the parent.

23 Pa.C.S. § 2503(a) cmt.

Additionally, Pennsylvania Orphans' Court Rule ("Pa. O.C. Rule") 15.2(a) provides as follows:

> **Rule 15.2. Voluntary relinquishment to agency**
>
> **(a) Petition.** A petition under Section [2501] of the Adoption Act to relinquish parental rights and duties with respect to a child who has been in the care of an Agency shall include the following allegations:
>
> (1) the name, address, age, racial background and religious affiliation of each petitioner;
>
> (2) the information required in subparagraph (1) as to any parent who is not a petitioner, including the father of a child born out of wedlock, if he has been identified, unless the court, for cause shown, determines such information is not essential;
>
> (3) the marital status if the mother as if the time of birth of the child and during one year prior thereto and, if the mother has ever been married, the name of her husband or husbands and her maiden name;
>
> (4) the name, age, date of birth, racial background, sex and religious affiliation of the child;
>
> (5) the name and address of the Agency having care of the child;

(6) the date when the child was placed with the Agency;

(7) when the child is born out of wedlock, whether the mother and the father of the child intend to marry;

(8) the reasons for seeking relinquishment;

(9) that each petitioner understands the petition, has considered the alternatives, and has executed the petition voluntarily to promote what the petitioner believes to be in petitioner's and the child's best interests.

**(b) Exhibits.** The petition shall have attached to it the following exhibits:

(1) the joinder of a parent who is not a petitioner or his or her waiver of all interest in the child, if either is obtainable;

(2) a birth certificate or certification of registration of birth of the child;

(3) the written consent of a parent or guardian of a petitioner who has not reached 18 years of age;

(4) the joinder of the Agency having care of the child and its consent to accept custody of the child until such time as the child is adopted.

**(c) Notice and Hearing.** If a parent, including the parent of a child born out of wedlock, has not relinquished his or her rights and duties in and to the child or joined in the other parent's petition hereunder, then notice of the hearing on the petition to relinquish rights and duties shall be given to the first referred to parent as provided in Rule 15.6. A parent may waive in writing the right to such notice. Each petitioner and each person whose joinder or consent is attached to the petition shall be examined under oath at the hearing unless excused by the court.

Pa. O.C. Rule 15.2.

In the instant case, Mother did not file a written petition to relinquish her parental rights pursuant to Section 2501(a), or a written petition requesting the permission of the trial court to permanently relinquish her parental rights and duties to Child under Section 2502(a).

The trial court treated Mother's "relinquishment" of her parental rights at the hearing on BCCYF's involuntary termination petition as a relinquishment to an agency under Section 2501(a). The involuntary termination petition did not conform to the requirements for a petition under Section 2501(a) or Section 2502(a), and it did not satisfy the requirements in Pa. O.C. Rule 15.2(a). The petition failed to state Mother's reasons for seeking relinquishment. Further, the petition did not state that Mother understood the petition, considered available alternatives, and believed that relinquishing her parental rights was in Child's best interests. *See* Pa. O.C. Rule 15.2(a). During the oral colloquy at the hearing, Mother's counsel questioned her about these matters. Neither the oral examination nor BCCYF's involuntary termination petition, however, complied with the requirements for a written voluntary relinquishment petition under Section 2501 or 2502. Likewise, neither the oral colloquy nor BCCYF's involuntary termination petition complied with the requirements for a petition under Section 2504.

Further, the panel in *In re A.M.B.* stated:

> The parental interest is so fundamental that a strict scrutiny standard of review is required to make a finding

> terminating parental rights, and due process requires that the party seeking termination must demonstrate by clear and convincing evidence that the parents can no longer perform parental duties and thus are not entitled to parental rights. ***Santosky v. Kramer***, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

***In re A.M.B.***, 812 A.2d at 670.

The trial court never completed the involuntary termination of parental rights proceeding or addressed the evidence in support of that petition. By convening an immediate hearing on Mother's voluntary relinquishment of her parental rights, the court denied Mother the mandatory ten-day deliberation period so that she could consider her voluntary relinquishment choice prior to her in-court ratification of the decision. ***See*** 23 Pa.C.S. § 2503(a) ("the court shall fix a time for hearing which shall not be less than ten days after filing of the petition."). Moreover, pursuant to Pa. O.C. Rule 15.2(c), Mother could have waived notice of the relinquishment hearing in writing, but she did not do so.

The record reflects that, on August 3, 2015, the trial court directed BCCYF to give Mother notice of a hearing on the involuntary termination hearing on BCCYF's petition pursuant to 23 Pa.C.S. § 2513 and Pa. O.C. Rule 15.6 at least ten days in advance of the hearing scheduled for August 18, 2015. There is no indication in the record that Mother waived the mandatory ten-day deliberation period pursuant to Section 2503(a), or that the ten-day period of that section was explained to her during the colloquy. Although judicial economy might dictate avoiding undesirable delay in a

Children's Fast Track case, we are unwilling to find that Mother waived her right to reflect upon the decision to relinquish parental rights when she was never advised of that right on the record.

Moreover, Mother asserts that her decision to voluntarily relinquish her parental rights was not knowingly, deliberately and voluntarily made. Mother claims that her relinquishment was qualified, conditioned on a post-adoption contact agreement with Paternal Grandmother, which she did not waive. Mother's Brief, at 10. Mother alleges that, after the hearing on August 18, 2015, her counsel attempted to reduce Paternal Grandmother's agreement for post-adoption contact to a written agreement. *Id.* She claims that Paternal Grandmother refused to enter the written agreement, and refused to allow the contact between Mother and Child to which she had agreed on the record. *Id.* Mother contends that she did not waive the right to enter into an Act 101 agreement concerning post-adoption contact, because Act 101 does not allow for the entry of the agreement until after parental rights have been terminated. *Id.*

Our Supreme Court has explained that the purpose of a hearing on a petition for voluntary relinquishment is to insure an intelligent, voluntary, and deliberate consent to the termination of parental rights. *In re Wolfe*, 454 Pa. 550, 555, 312 A.2d 793, 796 (1973). "A party seeking to disturb a termination decree must show that the consent given to terminate parental rights was not intelligent, voluntary, and deliberate." *In re M.L.O.*, 490 Pa.

237, 240, 416 A.2d 88, 90 (1980). The consent given to terminate parental rights voluntarily must be "clear and unequivocal." *In re Singer*, 457 Pa. 518, 523, 326 A.2d 275, 278 (1974). This Court has stated, "Termination of parental rights is a drastic measure that should not be taken lightly. Not only are [the parent's] rights at stake here, but [the child's] right to a relationship with [his or her parent] is also at stake." *In re K.G.M.*, 845 A.2d at 864 (citing *In re Stickley*, 638 A.2d 976, 980 (1994)). Further, in *In re K.G.M.*, this Court stated, "We are unwilling to allow the termination of . . . parental rights, however, **without strict compliance** with the procedures set forth by the Legislature. . . ." *In re K.G.M.*, 845 A.2d at 865 (emphasis added).

Without a valid waiver of her right to post-adoption contact, we cannot conclude that Mother intelligently, voluntarily, and deliberately consented to terminate her parental rights. BCCYF should have proceeded on its petition under Section 2511(a) and (b). The trial court could have then reviewed BCCYF's evidence, and we could have properly reviewed its decree. Instead, the trial court relieved BCCYF of its burden of proof under Section 2511, accepted Mother's relinquishment pursuant to Section 2501, and circumvented the Adoption Act's protection of Mother's due process rights. *See In re K.G.M.*, 845 A.2d at 865. Absent strict compliance with the Adoption Act, we cannot conclude that Mother's consent was voluntary. *See id.* We will not affirm the termination of Mother's parental rights when the

statutory requirements have not been satisfied. *See id.* Mother's consent to voluntarily terminate her parental rights is, therefore, invalid. We are constrained to vacate the decree voluntarily terminating her parental rights. We also remand the case with instructions to proceed on the involuntary termination petition or for Mother to file a proper voluntary petition under Subchapter A of the Adoption Act.

Decree vacated. Case remanded with instructions. Jurisdiction relinquished.

Stabile, J. has joined the Opinion.

Lazarus, J. files a Concurring Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2016