J-S13041-16

2016 PA Super 112

IN RE: C.M.C., A MINOR

APPEAL OF: C.L.C., MOTHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1432 WDA 2015

Appeal from the Decree Entered August 18, 2015
In the Court of Common Pleas of Blair County
Orphans' Court at No(s): 2015 AD 32

BEFORE: LAZARUS, J., STABILE, J., and FITZGERALD, J.[*]

CONCURRING OPINION BY LAZARUS, J.: **FILED MAY 26, 2016**

I agree that Mother's consent to terminate her parental rights was invalid under the Adoption Act. Mother did not petition the court to relinquish her rights, either pursuant to 23 Pa.C.S. §§ 2501(a) (Relinquishment to agency), or 23 Pa.C.S. § 2502(a) (Relinquishment to adult intending to adopt child), and BCCYF's petition for involuntary termination, did not satisfy Pennsylvania Orphans' Court Rules 15.2(a)(8), (9). Further, as the Majority notes, by converting the hearing on the involuntary petition to a voluntary termination hearing, the court deprived Mother of the ten-day waiting period, and there is no indication that the court explained this to Mother or that Mother waived that waiting period. 23 Pa.C.S. § 2503(a).

---

[*] Former Justice specially assigned to the Superior Court.

I write separately, however, to point out that Mother's argument on appeal specifically pertains to her belief that she had conditioned her consent to termination on Paternal Grandmother's testimony that she would allow continuing contact. There is no provision for this in the statute. The purpose of Act 101 is to provide "an option for adoptive parents and birth relatives to enter into a voluntary agreement for ongoing communication or contact[.]" 23 Pa.C.S. § 2731.[1] Here, Mother believed Paternal Grandmother was bound by her testimony at the hearing. N.T. Permanency/Termination Hearing, 8/18/15, at 18. Mother did not

---

[1] Act 101 states, in relevant part:

> § 2731. Purpose of subchapter.
>
> The purpose of this subchapter is to provide an option for adoptive parents and birth relatives to enter into a voluntary agreement for ongoing communication or contact that:
>
> (1) is in the best interest of the child;
>
> (2) recognizes the parties' interests and desires for ongoing communication or contact;
>
> (3) is appropriate given the role of the parties in the child's life; and
>
> (4) is subject to approval by the courts.

23 Pa.C.S. § 2731.

understand that Paternal Grandmother could not be *required* to allow post-adoption contact.[2]

_____

[2] **See** 23 Pa.C.S. § 2735 **(Filing and approval of an agreement)**, which provides:

 **(a) General rule.--** An agreement shall be filed with the court that finalizes the adoption of the child.

 **(b) Conditions for approval.**-- The court shall approve the agreement if the court determines that:

> (1) The agreement has been entered into knowingly and voluntarily by all parties. An affidavit made under oath must accompany the agreement affirmatively stating that the agreement was entered into knowingly and voluntarily and is not the product of coercion, fraud or duress. The affidavit may be executed jointly or separately.

> (2) The agreement is in the best interest of the child. In making that determination, factors that the court may consider include, but are not limited to, the following:

>> (i) The length of time that the child has been under actual care, custody and control of a person other than a birth parent and the circumstances relating thereto.

>> (ii) The interaction and interrelationship of the child with birth relatives and other persons who routinely interact with the birth relatives and may significantly affect the child's best interests.

>> (iii) The adjustment to the child's home, school and community.

>> (iv) The willingness and ability of the birth relative to respect and appreciate the bond between the child and prospective adoptive parent.

*(Footnote Continued Next Page)*

BCCYS argues Mother acknowledged that she understood that "even though that is the understanding and expectation" she could not "make [her] consent to terminate parental rights contingent upon that[.]" N.T. Permanency/Termination Hearing, 8/18/15, at 19-21. This acknowledgement referred directly to Paternal Grandmother's willingness to adopt Child, but it is unclear whether Mother understood that to mean that her relinquishment could not be contingent on Paternal Grandmother's statement that she would allow continuing contact. To the layperson, these may have been distinct ideas. For this reason as well, it is evident Mother's relinquishment of her parental rights was not voluntarily or intelligently made. *See In re M.L.O.*, 416 A.2d 88 (Pa. 1980).

*(Footnote Continued)* ——————————

> (v) The willingness and ability of the prospective adoptive parent to respect and appreciate the bond between the child and the birth relative.
>
> (vi) Any evidence of abuse or neglect of the child.

**(c) Legal effect.**--An agreement shall not be legally enforceable unless approved by the court.