J-S46045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.P., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.A.P., MOTHER | : | No. 3430 EDA 2015 |

Appeal from the Decree October 13, 2015
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): CP-51-AP-0000610-2015

BEFORE: BENDER, P.J.E., OTT, STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED JULY 25, 2016**

T.A.P. (Mother) appeals from the decree entered October 13, 2015, in the Court of Common of Philadelphia County, which terminated voluntarily her parental rights to her minor daughter, A.M.P., born in February of 2014 (Child).[1] We affirm.

The trial court summarized the factual and procedural history of this matter as follows.

> On March 17, 201[4], [the Philadelphia Department of Human Services (DHS)] received a General Protective Services (GPS) [report] alleging that [M.F.], [M]other's paramour, handled the child, [Child], inappropriately – dropping her roughly on the bed. Furthermore, the report alleged that [M]other has a history of

---

* Retired Senior Judge assigned to the Superior Court.

[1] The trial court entered a decree terminating involuntarily the parental rights of Child's father, B.W. (Father), that same day. The disposition of Father's appeal is by separate memorandum.

drug use. DHS recommended that [M]other remove her paramour from the residence. [M]other failed to comply with the recommendation that she remove [C]hild from the environment. Moreover, the report alleged that [M]other is fearful in her home and is afraid to leave the home. The report was substantiated.

On March 18, 2014, DHS received a supplemental report alleging that [M]other transported [C]hild to St. Christopher's Hospital for Children because [C]hild was continuously crying. The report alleged that [M]other stated that [C]hild would not drink her milk. The only food that [M]other gave to [C]hild for the day was two bottles of water. Furthermore, [C]hild had severe diaper rash and was dehydrated. Moreover, [M]other stated that she leaves [C]hild in the care of her paramour who she stated previously slammed [C]hild on the bed. Lastly, [M]other stated that [C]hild did not have a primary care physician and lacked immunizations.

On March 21, 2014, DHS visited [C]hild at St. Christopher['s] Hospital for Children. [M]other stated that she observed her paramour drop [C]hild on the bed. [M]other further stated that she was fearful to return home. Moreover, [M]other stated that she was unable to provide adequate care for [C]hild.

On March 21, 2014, DHS obtained an [O]rder of Protective Custody (OPC) for the child and placed her in a foster care home through Delta Community Services, where she currently remains.

A shelter care hearing was held on March 24, 2014. Master Summers lifted the OPC and ordered the temporary commitment of [Child] to the care and custody of DHS.

On April 1, 2014, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated [C]hild dependent and committed her to the care and custody of DHS.

Trial Court Opinion, 2/2/2016, at 1-2 (unnumbered pages).

On September 16, 2015, Mother and DHS filed a petition for the voluntary relinquishment of Mother's parental rights. The petition included a consent to adoption form executed by Mother. The trial court addressed the

petition during a hearing on October 13, 2015. Following the hearing, the court entered its decree terminating Mother's parental rights to Child voluntarily. Mother timely filed a *pro se* notice of appeal, along with a concise statement of errors complained of on appeal.[2]

Mother's complaint is as follows:

> I signed my rights over under the impression that I would be able to see [Child]. Now I find out it was all a lie and when I wanted to take back my rights it was too late. My DHS worker told me at least 5 or 6 times that she talked to the foster mom and I would be able see [Child] no problem, that she likes me. I just want to clear my name. I want my rights to be taken not like I just gave her away. I know it's over the time line for [Child] being in foster care. I just want my name to be cleared for the record. My attorney and DHS worker did nothing for me. There was no such thing as an open adoption. They just wanted her to be adopted. Thank you.

*Id.* at 4 (quoting Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 11/12/2015).

Pursuant to Section 2711 of the Adoption Act, a consent to adoption form executed by a birth mother "is irrevocable more than 30 days after the execution of the consent." 23 Pa.C.S. § 2711(c)(1)(ii). The Act further provides that an individual who executed a consent to adoption form "may challenge the validity of the consent only by filing a petition alleging fraud or duress" within certain time limits. 23 Pa.C.S. § 2711(c)(3)(i).

---

[2] Mother was represented by counsel during the October 13, 2015 hearing, and is represented by counsel on appeal.

In addition, this Court has provided the following guidance with respect to voluntarily relinquishment of parental rights.

> Our Supreme Court has explained that the purpose of a hearing on a petition for voluntary relinquishment is to insure an intelligent, voluntary, and deliberate consent to the termination of parental rights. A party seeking to disturb a termination decree must show that the consent given to terminate parental rights was not intelligent, voluntary, and deliberate. The consent given to terminate parental rights voluntarily must be clear and unequivocal.

*In re C.M.C.*, 2016 PA Super 112, 2016 WL 3036811 at *10 (Pa. Super. May 26, 2016) (citations and quotation marks omitted).

Here, the record does not reveal that Mother attempted to revoke her consent to adoption form within thirty days, nor does the record reveal that Mother ever filed a petition alleging fraud or duress. To the contrary, Mother was asked on the record whether she contacted DHS within 30 days to convey any change of mind and she stated that she had not. N.T., 10/13/2015, at 8. The Adoption Act therefore precludes Mother from challenging the validity of her consent to adoption form on appeal.

Moreover, our review of the record confirms that Mother's relinquishment of her parental rights was intelligent, voluntary, and deliberate. Mother was colloquied by her attorney during the October 13, 2015 hearing. *See* N.T., 10/13/2015, at 7-8. Contrary to the allegations contained in Mother's concise statement of errors complained of on appeal, Mother denied during the colloquy that she had been promised anything in connection with the voluntary relinquishment of her parental rights. *Id.* at

7. Mother agreed that she signed a document indicating that she intended to relinquish her parental rights to Child. ***Id.*** at 7. Mother confirmed that no one had forced her to sign the document, and that she still wished to proceed with the relinquishment. ***Id***

Accordingly, Mother is not entitled to relief from this Court.[3]

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2016

_____

[3] In her brief, Mother also claims that "DHS did not make reasonable efforts to reunify her with her child," and that "DHS did not meet the burden of clear and convincing evidence to terminate her parental rights." Mother's Brief at 3. However, Mother's parental rights were terminated **voluntarily** under 23 Pa.C.S. § 2711, not **involuntarily** under 23 Pa.C.S. § 2511. Indeed, upon the trial court's acceptance of Mother's voluntary relinquishment of her rights, DHS expressly withdrew the involuntary petition as to Mother and proceeded only against Father. N.T., 10/13/2015, at 8-9. Hence, Mother's claim that the evidence was inadequate under section 2511 bears no relevance to the trial court's order.