J-S09011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.C., MOTHER | : | |
| | : | No. 1588 MDA 2017 |

Appeal from the Decree Entered August 31, 2017
in the Court of Common Pleas of Tioga County
Orphans' Court Division at No.:  43 OC 2017

| | | |
|---|---|---|
| IN RE: A.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.C., MOTHER | : | |
| | : | No. 1589 MDA 2017 |

Appeal from the Decree Entered August 31, 2017
in the Court of Common Pleas of Tioga County
Orphans' Court Division at No.:  44 OC 2017

BEFORE: GANTMAN, P.J., McLAUGHLIN, AND PLATT*, JJ.

MEMORANDUM BY PLATT, J.:                    **FILED JULY 03, 2018**

In these consolidated cases[1], C.C. (Mother) appeals the decrees of the Court of Common Pleas of Tioga County, entered August 31, 2017, that involuntarily terminated her parental rights to her daughters, K.S. (born 5/11) and A.C. (born 12/12) (Children).[2]  We affirm.

---

* Retired Senior Judge assigned to Superior Court.

[1] This Court consolidated these cases, *sua sponte*, on November 28, 2017.

[2] The trial court also terminated the parental rights of K.S.'s father, E.B.  E.B. did not appeal that termination and he is not a party to this appeal.

The trial court first adjudicated the Children dependent by an order entered on October 21, 2014. The trial court entered the order after Mother allowed the Children to spend unsupervised time with A.C.'s father, D.C., who was a registered sex offender, and because Mother had both physical and mental conditions that affected her ability to parent the Children, making it unsafe for them to remain in the home. In an order entered September 24, 2015, the trial court found aggravated circumstances as to D.C. and ordered that reunification efforts with him were not necessary.

Tioga County Department of Human Services (DHS) placed the Children with a paternal aunt (Paternal Aunt) as a kinship provider and, when Mother and both Fathers agreed to transfer custody of the Children to Paternal Aunt, the trial court closed the case.

Mother had visitation with the Children, and Paternal Aunt complained about the difficulty dealing with what she termed Mother's "harassment" and requested that DHS remove the Children from her home. DHS filed a dependency petition on September 4, 2015. The trial court adjudicated the Children dependent on September 24, 2015, and placed them in foster care, where they had resided continuously for twenty-two months at the time of the termination hearing July 25, 2017. They had not been in Mother's care and custody for approximately thirty-three months.

The Children have been receiving therapy for an extended period of time. Dr. Denise Fager testified that A.C. had significant behavioral issues,

specifically sexualized behaviors, which led to a trauma evaluation and a diagnosis of post-traumatic stress disorder that required trauma therapy. (*See* N.T. Hearing, 7/25/17, at 20). K.S. was also in counseling with a diagnosis of generalized anxiety disorder Not Otherwise Specified (NOS). (*See id.* at 21). Dr. Fager noted that A.C.'s Adverse Childhood Experience (ACE) score was a 4 out of 10 and K.S.'s score was a 5 out of 10. (*See id.* at 23). Dr. Fager indicated that this score indicated that the Children would suffer from trauma symptoms and require treatment. (*See id.*).

Testimony from providers and caseworkers showed that, despite services DHS offered for a considerable period, Mother had made little progress in alleviating the circumstances that led to placement. Specifically, Mother was discharged from the Support, Teach and Educate Parents (STEPS) program because of a lack of compliance, and from the Intensive Case Management (ICM) program because she was only "minimally compliant" with her goals. (*Id.* at 90; *see id.* at 84-85). Caseworker Brandi Greene testified that Mother did not complete her family service plan goals and continued to be argumentative and uncooperative with DHS even up to the date of the hearing. (*See id.* at 111).

Mother's visitation was changed from unsupervised to supervised after she permitted the Children to have unsupervised contact with D.C. in February and March of 2017. These contacts resulted in the filing of a child abuse report deemed indicated for creating a likelihood of sexual abuse or exploitation of a

child through an act or failure to act. (*See id.* at 117). Both Mother and D.C. were named on the reports of unsupervised contact with D.C. Mother testified about the circumstances of the incidents but denied any responsibility and seemed unaware of both the implications of defying a court order or the impact contact with D.C. might have on the Children. (*See id.* at 151-53).

On August 31 and September 8, 2017, the trial court entered its decrees and opinions, dated August 31, 2017, involuntarily terminating Mother's parental rights. Mother timely filed her notices of appeal and concise statements of errors complained of on appeal on October 4, 2017. *See* Pa.R.A.P. 1925(a)(2)(i). The trial court did not issue any additional opinion. *See* Pa.R.A.P. 1925(a).

Mother raises the following questions on appeal:

1. Did the trial court abuse its discretion determining that the best interest of the [C]hildren would be served by terminating the [M]other's parental rights?

2. Did the trial court abuse its discretion in determining that [M]other did not have sufficient protective capacity of her [C]hildren?

3. Did the trial court abuse its discretion in not allowing [M]other to voluntarily relinquish her parental rights when the trial court held the record open and had not yet issued a final order regarding the termination of parental rights?

(Mother's Brief, at 5).

Our standard of review in the termination of parental rights is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal

- 4 -

conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8) and (b).

Here, the trial court concluded that termination was appropriate under

§ 2511(a)(8).

With regard to Section 2511(a)(8), in order to terminate parental rights, an agency must prove by clear and convincing evidence that (1) that [sic] the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child

- 6 -

still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child.

*In re: C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008) (*en banc)* (citations omitted).

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation

performed by an expert. **_See In re K.K.R.-S_**., 958 A.2d 529, 533 (Pa. Super. 2008).

In the cases on appeal, the trial court's analysis of subsection (a)(8) in its two separate opinions is identical, only the names of the Children differ. We quote the trial court here, with approval, by inserting the identities of the two Children into one analysis:

> The [trial c]ourt will begin its analysis with the provisions of [§ 2511](a)(8), which requires that [DHS] establish by clear and convincing evidence that the child has been removed from the care of the parent by court order, or under voluntary agreement twelve (12) or more months have lapsed from the date of removal or placement the conditions which led to the removal or placement of the child continue to exist and the termination of parental rights would best serve the need and welfare of the child.
>
> As to [Mother], the [trial c]ourt, again, notes [K.S./A.C.] [have] been removed from [Mother's] custody for over two years, nearly two years in the dependency action and in an excess of two years going back to the voluntary custody agreement that was entered to avoid an initial removal of [K.S./A.C.] from the home.
>
> The [trial c]ourt notes that the first prong of twelve (12) months or more have elapsed since the date of removal is, therefore, established by clear and convincing evidence [sic].
>
> The [trial c]ourt further finds that [DHS] has established by clear and convincing evidence that the conditions which led to the removal and ultimate placement of [K.S./A.C.] continue to exist. Specifically, the [c]ourt, again, notes that a fundamental underlying issue has been the failure of [Mother] to demonstrate a protective capacity or exercise and demonstrate parental competence.
>
> The [trial c]ourt notes [DHS] has provided services as directed by the [c]ourt and as mandated by law. At no time has [DHS] withheld or denied services. To the contrary, [Mother] has at times refused all services as is the case most currently. At other times, the [c]ourt finds based on the testimony it deems

credible today, she has accepted services but has not followed through and not demonstrated [any] improvement in parental capacity.

The [c]ourt, again, finds and notes the absolute lack of protective capacity demonstrated by [Mother's] acknowledgement that she, on at least one occasion, permitted the [C]hildren to remain in contact and in the same location as [D.C.] despite the [c]ourt's prior clear and ongoing prohibition on such behavior. Rather than removing the [C]hildren from the situation, according to her and her testimony, she facilitated the continuing contact through the hair cut or other behavior and contact.

The [trial c]ourt notes that it specifically finds credible the testimony of caseworker, Ms. Greene, as to the indicated findings of abuse, based on contacts which were more extensive than the one which [Mother] has acknowledged. Therefore, the [c]ourt finds [DHS] has met the second prong by clear and convincing evidence.

The third prong requires the [trial c]ourt to consider whether or not termination would best serve the needs and welfare of [K.S./A.C.]. According to the uncontroverted testimony of Dr. Fager, [K.S./A.C.] require[] and desire[] that permanency be established in [their lives]. The [c]ourt notes that [K.S./A.C.] ha[ve] demonstrated significant progress in [their] treatment through therapy and that this progress has been noted to be substantially increased since March of this year. The [c]ourt finds as credible that this progress is supported by the stability and consistency which is provided within the foster placement; and that the need[s] of [K.S./A.C.] for permanency [are] fundamental to [their] best interests, and that [their] best interests would, accordingly, for these reasons and others discussed below, be supported by the termination of the parental rights of [Mother].

(Trial Court Opinions, Nos. 43 and 44 OC 2017, 8/31/17, at 3-5).

Our review of the record reveals that the trial court did not abuse its discretion when it terminated Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(8). Thus, Mother's second issue is meritless.

After considering the best interests of K.S. in this matter, the trial court found:

> The [c]ourt has received credible testimony that [K.S.] has flourished in her foster placement through the ongoing stability and consistency demonstrated within that home and in conjunction with the therapy which has been provided by the professionals in this case that [K.S.] has been able to address significant behavioral and other issues related to trauma and the anxiety experienced in her life prior to placement. That [K.S.] has developed connections within the [foster] home, that the [foster parents] have offered credible testimony that they are willing to allow permanency and pursue permanency in the form of adoption and legally enroll or bring [K.S.] in their home as a child.
>
> The [trial c]ourt finds that the best interest of [K.S.] would clearly be served by the establishment of permanency as soon as possible in a home where she will have continued stability and consistency, and will continue to have support and access to counseling, and that those needs are best met by the grant of termination.

(Trial Ct. Op., No. 43 OC 2017, at 7).

The trial court made a similar finding in regard to A.C.:

> The [c]ourt, in considering the best interests of [A.C.] in this matter, notes that she has been in placement nearly half of her life; that she has developed significant bonds with [her foster] family, as acknowledged even by [Mother]; that the bond between [A.C.] and her sister [K.S.] is of significant value and should be preserved if at all possible; and the bond between [A.C.] and the other children in the [foster] home, and in fact all other members of the [foster] family, including [foster parents], is significant and will be a valuable resource in ensuring her well-being and best interests going forward, if the [foster parents] are indeed the permanency option.
>
> The [c]ourt finds that the best interest of [A.C.] would clearly be served by the establishment of permanency as soon as possible in a home where she will have continued stability and consistency, and will continue to have support and access to

- 10 -

counseling, and that those needs are best met by the grant of termination.

(Trial Ct. Op., No. 44 OC 2017, at 7).

Our review of the record reveals that the trial court did not abuse its discretion when it determined that the best interests of the Children would be served by the termination of Mother's parental rights to them pursuant to subsection 23 Pa.C.S.A. § 2511(b).  Accordingly, we conclude that Mother's first issue is meritless.

In her final issue, Mother complains that trial court abused its discretion when it did not allow her to voluntarily relinquish her parental rights when the trial court, after hearing all testimony, held the record open to permit D.C. the opportunity to voluntarily relinquish his parental rights before issuing decrees as to Mother and E.B.  (**See** Mother's Brief, at 17).  We disagree.

In **In re Adoption of A.M.B.**, 812 A.2d 659, 667-68 (Pa. Super 2002), this Court held that the involuntary termination of a mother's parental rights was appropriate where the mother sought to voluntarily terminate her rights after the agency involved had filed an involuntary termination petition, and where the purpose of her petition was to avoid having an involuntary termination of rights from being considered an aggravated circumstance in any future termination proceeding.

Additionally, in this Court's decision in **In re C.M.C.**, 140 A.3d 699, 711 (Pa. Super. 2016), we held the trial court could not properly accept the mother's voluntary relinquishment of her parental rights in a case such as the

- 11 -

one before us, where the trial court had already heard testimony on an involuntary termination petition. We reversed the voluntary termination, and remanded for further proceedings. Mother's third issue is without merit.

Accordingly, we affirm the decrees of the Court of Common Pleas of Tioga County that terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b), and changed the Children's goals to adoption.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/18