J-S34030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.T.G., JR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.G., NATURAL FATHER | : | |
| | : | No. 345 WDA 2019 |

Appeal from the Order Dated January 28, 2019
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2018-0115 IVT

| | | |
|---|---|---|
| IN RE: ADOPTION OF T.L.G. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.G., NATURAL FATHER | : | |
| | : | No. 346 WDA 2019 |

Appeal from the Order Entered January 28, 2019
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2018-0116 IVT

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS*, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED AUGUST 12, 2019**

M.G. ("Father") appeals from the orders terminating his parental rights to M.T.G. (born August 2015) and T.L.G. (born January 2017) (collectively "Children"). Father argues Children and Youth Services of Cambria County ("CYS") failed to establish that termination was in Children's best interest. We affirm.

_____
* Retired Senior Judge assigned to the Superior Court.

The trial court set forth the factual and procedural history of this case. Trial Court Opinion, filed Mar. 19, 2019, at 1-10 ("1925(a) Op."). Relevant to this appeal, we note that CYS became involved with this family in January 2015 due to concerns regarding transiency and concerns that Father was mistreating A.L.C. A.L.C. is the daughter of F.C. ("Mother"),[1] but Father is not her biological father.

M.T.G. was born in August 2015 and removed from Father's care in November 2015. Although Father was moderately compliant with his permanency plan in 2016, he was minimally compliant by January 2017. M.T.G. was returned to Mother in the fall of 2016, but Father was not permitted to have unsupervised contact. Both M.T.G. and T.L.G. were removed in April 2017.

In October 2017, the court found:

> [P]arents continued to have unstable and inconsistent housing, . . . . Both parents were unemployed and continued to struggle with finances. They failed to comply with previous orders of the Court to submit to drug screens, failed to follow through with court-ordered anger management, had been non-compliant with the social workers, and seemed to lack insight into their poor decision-making skills, which was evidenced by their lack of cooperation with services, continuing drug use, and lack of follow-through with addressing their mental health issues. The Court found that the children needed a permanent, consistent environment.

---

[1] The trial court terminated Mother's parental rights to A.L.C., M.T.G. and T.L.G. Mother filed notices of appeal, which are docketed at 342 WDA 2019, 343 WDA 2019, and 344 WDA 2019. We will address Mother's appeals in a separate memorandum.

1925(a) Op. at 8.

In February 2018, CYS filed petitions to involuntarily terminate Father's parental rights to Children.

The court held a hearing on the petitions to terminate parental rights on June 8, 2018, August 8, 2018, and January 28, 2019. The court heard testimony regarding the bond between Children and Father and whether termination would be in Children's best interest. May Popovich, a CYS caseworker, testified that termination would be in Children's best interest:

> The termination of the parental rights [to Children] meets the best interest of these children due to the parents' mental health issues and lack of cooperation with the agency, the lack of their parenting skills, immature behaviors of the parents, their transiency and failure to maintain appropriate residency for themselves and the children.
>
> They have failed to follow through with court-ordered services and overall lack motivation to meet the basic needs and ensure the safety and well-being of [Children].

N.T., 8/8/18, at 33-34. Ms. Popovich further stated that Children "were doing really well in their placement." *Id.* at 34. They were happy and have flourished. *Id.* She further stated that Children have bonded with their foster family. *Id.*

Ashley Shaffer, a CYS social worker, testified that Father would lie on the couch during visits with Children, claiming he had stayed up the night before because he was afraid he would miss the visit. *Id.* at 60. She stated Father would be "highly agitated," wanted to rest, "swore a lot," and "called the children names." *Id.* At one visit, Shaffer had to call the sheriffs to escort

Father out because she feared for Mother's and Children's safety. *Id.* He had thrown a phone at A.L.C. while she was crying, and "the more scared she became, the further he would escalate the anger." *Id.* at 61. She testified Father did not have a bond with Children, noting he never held T.L.G. *Id.* She stated that Children were bonded to the foster family, and that Children "basically associated with [foster parents] as their mom and dad." *Id.* at 66.

Jen Drager, program director for Independent Family Services, testified at the hearing that she worked as a mental health professional with the family from September 2015 through August 2017. *Id.* at 91-92. She stated that her prognosis when the family was discharged was "poor because we had regressed back to the initial reasons that the children were removed in 2015." *Id.* at 94. Ms. Drager had observed visits between Father and Children, but had not observed any visits after April 2017, when M.T.G. and T.L.G. were removed. She testified that Father "had a lot of anger issues, poor communication skills," and noted that "at times he would attempt to use the parenting skills we would discuss, but other times he would revert back to yelling and using a stern voice." *Id.* at 95. Drager testified that "there was a little bit of a bond" between M.T.G. and Father, noting M.T.G. "would look to [Father] for comfort occasionally, not all the time." *Id.* at 96. She also testified that "due to the children's age and the amount of time they've been out of the home, that this termination will not affect them" and she believed the termination would promote their emotional and physical well-being. *Id.* at 97.

The trial court found termination proper under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8), and found termination would meet Children's developmental, physical and emotional needs and welfare under Section 2511(b). Order, filed Jan. 28, 2019; Petition for Involuntary Termination of Parental Rights, filed Feb. 5, 2018; 1925(a) Op. at 11. Father filed a timely Notice of Appeal.

Father raises the following issue on appeal:

> Whether the [t]rial [c]ourt erred in terminating [Father's] parental rights to the subject children, because [CYS] failed to meet [its] burden by clear and convincing evidence, including, but not limited to failing to identify how termination of [Father's] parental rights would impact the children, in particular, the bond between [Father] and the children.

Father's Br. at 4.

When reviewing an order terminating parental rights, we accept the findings of fact and credibility determinations of the trial court if the record supports them. *See In re C.M.C.*, 140 A.3d 699, 704 (Pa.Super. 2016). If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion. *Id.*

A party seeking termination of parental rights bears the burden of establishing grounds for termination "by clear and convincing evidence." *In re Z.S.W.*, 946 A.2d 726, 728 (Pa.Super. 2008). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the

truth of the precise facts in issue." *Id.* at 728-729 (internal quotation marks and citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under Section 2511, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted).

In the present case, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) and § 2511(b) of the Adoption Act. On appeal, Father does not challenge the trial court's determination that CYS established termination was proper under Section 2511(a). He argues that CYS presented insufficient evidence that termination was in Children's best interests and therefore the court erred in finding termination proper under Section 2511(b). He argues CYS "did not meet its burden by clear and convincing evidence when it came to the issue of how this

termination would impact the subject children." Father's Br. at 8. He claims the witnesses who testified no bond existed between Father and Children provided only improper lay opinions about bonding. He further claims that although the witnesses testified there was no bond between Father and Children, they failed to testify as to any impact the termination of parental rights would have on Children. *Id.* at 17.

Under Section 2511(b), the court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the child's best interest. *See* 23 Pa.C.S.A. § 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 514 (Pa.Super. 2006). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *In re C.M.S*., 884 A.2d 1284, 1287 (Pa.Super. 2005). The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* Importantly, "[t]he mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Instead, the trial court "must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship." *Id.* (internal quotation marks and citation omitted). Further, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether

- 7 -

they have a bond with their foster parents." ***In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013).

When assessing the bond, the "court is not required to use expert testimony." ***In re Z.P.,*** 994 A.2d 1108, 1121 (Pa.Super. 2010). Rather, a court may rely upon the observations and evaluations of social workers. ***Id.***

Here, the trial court found any bond between Father and Children was not a parent-child bond. It found Children had bonds with their foster parents. 1925(a) Op. at 10. The court found termination would be in Children's best interest. It noted that the casework supervisor stated that:

> The termination of parental rights in regards to [Mother and Father] meets the best interest of [C]hildren due to the parents' mental health issues, lack of cooperation with [CYS], lack of parenting skills, immature behavior or the parents, transiency, and the failure to maintain an appropriate residence for themselves and their children. The parents have failed to follow through with court-ordered services and overall lack of motivation to meet the basic needs and ensure the safety and well-being of [Children].
>
> In the opinion of this casework supervisor, [C]hildren should be freed for adoption. The parents have been unable to demonstrate their ability to raise these children in a stable environment, which would meet [C]hildren's medical, physical, emotional, social, educational, and safety needs. Since being removed from their parents' custody, [C]hildren have resided together in foster care and it appears that they have a strong and close relationship with their foster family.

***Id.*** at 10-11.

The record supports the court's factual findings and it did not abuse its discretion in finding termination would meet "the developmental, physical and emotional needs and welfare of [Children]." ***See*** 23 Pa.C.S.A. § 2511(b).

Here, Children have been removed from Father's care for the majority of their lives. Contrary to Father's contention, no formal bonding evaluation was required. Further, CYS did present evidence Father did not have a bond with Children and that the termination of his parental rights would be in their best interest, including the testimony of Popovich, Shaffer, and Drager. The testimony supports that when considering the developmental, physical and emotional needs and welfare of Children, the termination of Father's parental rights would be in their best interest.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2019