J-S34029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE ADOPTION OF: A.L.C. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: F.C. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 342 WDA 2019 |

Appeal from the Order Entered January 28, 2019
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  No. 2018-114-IVT

| | | |
|---|---|---|
| IN RE: THE ADOPTION OF M.T.G., JR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: F.C. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 343 WDA 2019 |

Appeal from the Order Entered January 28, 2018
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2018-115 IVT

| | | |
|---|---|---|
| IN RE: THE ADOPTION OF: T.L.G. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: F.C. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 344 WDA 2019 |

Appeal from the Order Entered January 28, 2019
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  No. 2018-116 IVT

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS*, J.

_____
*   Retired Senior Judge assigned to the Superior Court.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED AUGUST 12, 2019**

F.C. ("Mother") appeals from the orders terminating her parental rights to A.L.C. (born July 2014), M.T.G. (born August 2015), and T.L.G. (born January 2017) (collectively "Children"). Mother argues Children and Youth Services of Cambria County ("CYS") failed to establish that termination was in Children's best interest. We affirm.

T.M. is the father of A.L.C.[1] M.G. is the father of M.T.G. and T.L.G.[2] The trial court set forth the factual and procedural history of this case. Trial Court Opinion, filed Mar. 19, 2019, at 1-10 ("1925(a) Op."). Relevant to this appeal, we note that CYS became involved with this family in January 2015 due to concerns regarding transiency and concerns that M.G. was mistreating A.L.C. In November 2015, both A.L.C. and M.T.G. were removed from Mother's care. Although Mother was in substantial compliance with her permanency plan in 2016, her compliance deteriorated in 2017. M.T.G. was returned to Mother in the fall of 2016, but both M.T.G. and T.L.G. were removed in April 2017.

In October 2017, the court found:

> [P]arents continued to have unstable and inconsistent housing, with [Mother] only recently at the time obtaining a residence through the Journey Program. Both parents were unemployed and continued to struggle with finances. They failed to comply with previous orders of the Court to submit

---

[1] The trial court terminated T.M.'s parental rights to A.L.C. T.M. has not appealed.

[2] The trial court terminated M.G.'s parental rights to M.T.G. and T.L.G. M.G. filed notices of appeal, which are docketed at 345 WDA 2019 and 346 WDA 2019. We will address M.G.'s appeal in a separate memorandum.

to drug screens, failed to follow through with court-ordered anger management, had been non-compliant with the social workers, and seemed to lack insight into their poor decision-making skills, which was evidenced by their lack of cooperation with services, continuing drug use, and lack of follow-through with addressing their mental health issues. The Court found that the children needed a permanent, consistent environment.

1925(a) Op. at 8.

In February 2018, CYS filed petitions to involuntarily terminate Mother's parental rights to Children.

The court held a hearing on the petitions to terminate parental rights on June 8, 2018, August 8, 2018, and January 28, 2019. The court heard testimony regarding the bond between Children and Mother and whether termination would be in Children's best interest. May Popovich, a CYS caseworker, testified that termination would be in Children's best interest:

The termination of the parental rights [to Children] meets the best interest of these children due to the parents' mental health issues and lack of cooperation with the agency, the lack of their parenting skills, immature behaviors of the parents, their transiency and failure to maintain appropriate residency for themselves and the children.

They have failed to follow through with court-ordered services and overall lack motivation to meet the basic needs and ensure the safety and well-being of [Children].

N.T., 8/8/18, at 33-34. Ms. Popovich further stated that Children "were doing really well in their placement." *Id.* at 34. They were happy and have flourished. *Id.* She further stated that Children have bonded with their foster family. *Id.*

Ashley Shaffer, a CYS social worker, testified that Mother loved her children and there was a bond between Mother and Children, but that it was not a parent/child bond. *Id.* at 61. She stated it was "[m]ore of a playmate bond." *Id.* at 62. She stated that Children were bonded to the foster family, and that Children "basically associated with [foster parents] as their mom and dad." *Id.* at 66.

Jen Drager, program director for Independent Family Services, testified at the hearing that she worked as a mental health professional with the family from September 2015 through August 2017. *Id.* at 91-92. She stated that her prognosis when Mother was discharged was "poor because we had regressed back to the initial reasons that the children were removed in 2015." *Id.* at 94. Ms. Drager had observed visits between Mother and Children, but had not observed any visits after April 2017, when M.T.G. and T.L.G. were removed. She testified that Mother was learning parenting skills and utilized those skills, there was a bond between Mother and Children, and Children "would seek [Mother] out for comfort." *Id.* at 94-96. She also testified that "due to the children's age and the amount of time they've been out of the home, that this termination will not affect them," and that she believed the termination would promote their emotional and physical well-being. *Id.* at 97.

The trial court found termination proper under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8), and found termination would meet Children's developmental, physical and emotional needs and welfare under Section 2511(b). Order, filed Jan. 28, 2019; Petition for Involuntary Termination of

Parental Rights, filed Feb. 5, 2018; 1925(a) Op. at 11. Mother filed a timely Notice of Appeal.

Mother raises the following issue on appeal: "Did the [t]rial [c]ourt err in its determination that [CYS] had met its burden of proof in demonstrating by clear and convincing evidence that the interests of the minor children would be best served by termination of the parental rights of [Mother]?" Mother's Br. at 7.

When reviewing an order terminating parental rights, we accept the findings of fact and credibility determinations of the trial court if the record supports them. *See In re C.M.C.*, 140 A.3d 699, 704 (Pa.Super. 2016). If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion. *Id.*

A party seeking termination of parental rights bears the burden of establishing grounds for termination "by clear and convincing evidence." *In re Z.S.W.*, 946 A.2d 726, 728 (Pa.Super. 2008). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* at 728-29 (internal quotation marks and citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under Section 2511, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***Id.*** (citations omitted).

In the present case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) and § 2511(b) of the Adoption Act. On appeal, Mother does not challenge the trial court's determination that CYS established termination was proper under Section 2511(a). She argues that CYS presented insufficient evidence that termination was in Children's best interests and therefore the court erred in finding termination proper under Section 2511(b). Mother claims the court did not "adequately consider the bilateral bonding between [Mother] and the minor children." Mother's Br. at 11. She notes that Independent Family Services reported that she had a loving relationship with Children, had "a knowledge of basic parenting techniques," and referenced her bond and relationship with

Children. *Id.* at 12. Mother argues that she "was well on her way to meeting every single one of the goals set out for her." *Id.* at 14.[3]

Under Section 2511(b), the court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the child's best interest. *See* 23 Pa.C.S.A. § 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 514 (Pa.Super. 2006). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). The trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* Importantly, "[t]he mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Instead, the trial court "must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship." *Id.* (internal quotation marks and citation omitted). Further, "[c]ommon sense dictates that courts considering termination must

_____

[3] To the extent Mother is attempting to argue that termination was not proper under Section 2511(a) because she was on her way to meeting her goals, she has waived this issue by failing to include it in her question presented and failing to provide citations to case law. *See Smathers v. Smathers*, 670 A.2d 1159, 1160 (Pa.Super. 1996). Further, even if she had not waived the issue, we would conclude the record supports trial court's finding that she was not in compliance with her plan, and it did not abuse its discretion.

also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013).

Here, the trial court found the bond between Mother and Children was not a parent-child bond, but more like a "playmate" bond. 1925(a) Op. at 10. It found Children had bonds with their foster parents. ***Id.*** The court found termination would be in Children's best interest. It noted that the casework supervisor stated that:

> The termination of parental rights . . . meets the best interest of [C]hildren due to the parents' mental health issues, lack of cooperation with [CYS], lack of parenting skills, immature behavior or the parents, transiency, and the failure to maintain an appropriate residence for themselves and their children. The parents have failed to follow through with court-ordered services and overall lack of motivation to meet the basic needs and ensure the safety and well-being of [Children].
>
> In the opinion of this casework supervisor, [C]hildren should be freed for adoption. The parents have been unable to demonstrate their ability to raise these children in a stable environment, which would meet [C]hildren's medical, physical, emotional, social, educational, and safety needs. Since being removed from their parents' custody, [C]hildren have resided together in foster care and it appears that they have a strong and close relationship with their foster family.

***Id.*** at 10-11.

The record supports the court's factual findings and it did not abuse its discretion in finding termination would meet "the developmental, physical and emotional needs and welfare of [Children]." ***See*** 23 Pa.C.S.A. § 2511(b). Here, Children have been removed from Mother's care for the majority of their

lives. Drager did testify that a bond existed between Mother and Children, at least prior to April 2017. She also testified, however, that termination of Mother's parental rights would promote Children's emotional and physical well-being. Further, Shaffer testified that any bond between Mother and Children was a "playmate" bond. The witnesses agreed that Children have bonded with the foster family. Further, the record supports a finding that, at the time of termination, Mother was not compliant with her permanency plan. The testimony supports that when considering the developmental, physical and emotional needs and welfare of Children, the termination of Mother's parental rights would be in their best interest.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2019