J-S20026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.G., MOTHER | : | No. 266 MDA 2021 |

Appeal from the Decree Entered January 26, 2021
In the Court of Common Pleas of Northumberland County
Orphans' Court at No(s): Adoptee #22 of 2020

| | | |
|---|---|---|
| IN THE INTEREST OF: E.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.G., MOTHER | : | No. 267 MDA 2021 |

Appeal from the Decree Entered January 26, 2021
In the Court of Common Pleas of Northumberland County
Orphans' Court at No(s): Adoptee #23 of 2020

| | | |
|---|---|---|
| IN THE INTEREST OF: I.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.G., MOTHER | : | No. 268 MDA 2021 |

Appeal from the Decree Entered January 26, 2021
In the Court of Common Pleas of Northumberland County
Orphans' Court at No(s): Adoptee #24 of 2020

BEFORE: NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY KING, J.: **FILED: August 13, 2021**

Appellant, S.G. ("Mother"), appeals from the decrees entered in the

Northumberland County Court of Common Pleas, which terminated Mother's

parental rights and confirmed Mother's consent to the adoption of A.H., E.H., and I.G. ("Children"). We affirm.

The relevant facts and procedural history of this case are as follows. After Mother was hospitalized with a series of strokes, Northumberland County Children and Youth Services ("CYS") obtained temporary physical and legal custody on March 28, 2018, of all six of Mother's children (three boys: N.G., K.H., and J.H.; and three girls: I.G., E.H., and A.H.). Following a hearing on April 2, 2018, the court adjudicated all six children dependent, as Mother was incapacitated due to her strokes, and there were no kinship options available. Initially, all six children were placed in the same foster home; however, in January 2019, the three girls were moved to their current foster home.[1] Meanwhile, on May 31, 2018, Mother was released from a rehabilitation center. Mother continued to suffer from physical limitations due to her strokes and relocated to Montgomery County to live with her parents.[2]

On May 13, 2020, CYS filed a petition for involuntary termination of Mother's parental rights to Children.[3] A hearing on the petition to terminate

_____

[1] The record indicates that Mother's oldest son, N.G., was later moved to a residential care facility.

[2] In her brief, Mother explains: "The maternal grandparents were willing to take custody of all the minor children but were not able due to the size of their residence." (Mother's Brief at 11).

[3] Legal counsel for Children explained in her brief that "[CYS] did not file to terminate Mother's rights to the three boys as one of the boys [(N.G.)]
*(Footnote Continued Next Page)*

Mother's parental rights was originally scheduled for August 14, 2020, but after several continuances, it was rescheduled for January 4, 2021. Meanwhile, the court conducted a permanency review hearing on September 28, 2020, during which Mother agreed to sign a consent to relinquish her parental rights to Children. The court conducted an on-the-record colloquy and determined that "the relinquishment of [Mother's] parental rights [has] been done intelligently and voluntarily." (N.T. Hearing, 9/28/20, at 15). Significantly, during the following exchange, Mother acknowledged her decision to voluntarily relinquish her parental rights to Children and conceded that no promises or threats had been made to influence her decision:

> [The Court]:  You understand if you voluntarily relinquish your parental rights, your rights to these …[C]hildren are forever ended and …[C]hildren will be placed for adoption?
>
> [Mother]:      Yes.
>
> [The Court]:  Once I find that you have entered into a Voluntary Relinquishment your parental rights are forever terminated. Do you understand that?
>
> [Mother]:      Yes.
>
> [The Court]:  You have had enough time to talk about all of this with your attorney?
>
> [Mother]:      Yes.
>
> [The Court]: You     are     satisfied     with     his     legal representation?

---

returned home to [M]other and the other two [(J.H. and K.H.)] were placed with a family via subsidized permanent legal custodianship." (Brief of Legal Counsel for Children at 3).

[Mother]:        Yes.

[The Court]:    Do you have any questions about anything your attorney told you?

[Mother]:        No.

[The Court]:    Any questions about anything I've explained?

[Mother]:        No.

[The Court]:    Has anybody made any promises or threats to get you to [voluntarily] relinquish your parental rights?

[Mother]:        No.

[The Court]:    Do you believe it is in your best interest and …[C]hildren's best interest to voluntarily relinquish your parental rights?

[Mother]:        Yes.

(*Id.* at 14-15).

On November 18, 2020, CYS filed a petition to confirm Mother's consent, and a hearing was scheduled for December 29, 2020. The hearing was subsequently continued until January 4, 2021. On January 3, 2021, however, Mother learned that Children's foster family no longer wished to adopt I.G. Mother filed a petition to revoke her voluntary relinquishment the following day. A hearing on Mother's petition to revoke her consent was scheduled for January 25, 2021, and the "confirm consent" hearing was continued until the same day.

The court conducted the hearing on January 25, 2021. At the conclusion

- 4 -

of the hearing, the court denied Mother's request to withdraw the voluntary relinquishment. The court also entered an order confirming Mother's consent to the adoption of Children. On February 19, 2021, Mother timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). This Court consolidated the appeals *sua sponte* on March 17, 2021.

Mother raises the following issues on appeal:

> Whether the trial court erred and/or abused its discretion in denying [Mother's] request to withdraw her voluntary relinquishment of her parental rights?

> Whether the trial court erred and/or abused its discretion in confirming the relinquishment of [Mother's] parental rights when there is not a permanency option for I.G. and therefore I.G. has been made an orphan by the court?

(Mother's Brief at 9).

In Mother's issues combined, she argues the trial court abused its discretion in confirming her voluntary consent and granting the termination of her parental rights to Children where Mother learned the day before her "confirm consent" hearing that the foster family no longer intended to adopt I.G. due to behavioral issues. Mother asserts that CYS learned in December of 2020 that foster mother no longer wished to adopt I.G. Mother alleges this information was kept from her until January 2021, to prevent her from withdrawing her consent. Mother contends her consents to adoption were obtained through fraudulent means where she was not informed of this information and where she was led to believe she would receive custody of

her son, N.G., if she signed away her rights to Children.

Furthermore, Mother relies on *In re J.W.B.*, ___ Pa. ___, 232 A.3d 689 (2020), to argue that the court should have considered Mother's request to revoke her voluntary consent past the sixty day time limit where (1) Mother filed her request to withdraw the consent within twenty-four hours of learning Children would be separated; and (2) the foster family's decision was not presented to Mother "at the time her consent was signed [or] during the period for revocation." (Mother's Brief at 13). Mother maintains the denial of her request to withdraw the consent left I.G. without a permanent home and rendered I.G. a "legal orphan." (*Id.*). Mother concludes this Court should reverse the trial court's decision granting the termination of her parental rights. We disagree.

"With regard to revocation of consent to adoption in relation to a voluntary relinquishment of parental rights, we review the trial court's determination for an abuse of discretion or legal error." *In re C.M.C.*, 140 A.3d 699, 704 (Pa.Super. 2016).

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*Id.* at 705.

Parental rights in Pennsylvania can be terminated voluntarily or

involuntarily. 23 Pa.C.S.A. §§ 2501-2513. Both procedures have the same result: to end the legal relationship between parent and child and to free the child for adoption. ***In the Matter of the Adoption of A.M.B.***, 812 A.2d 659, 662 (Pa.Super. 2002). Section 2504 of the Adoption Act describes the procedure whereby a parent executes a consent to adoption, and an agency or adoptive parent files a petition to confirm that consent:

**§ 2504. Alternative procedure for relinquishment**

**(a)** **Petition to confirm consent to adoption.—**If the parent or parents of the child have executed consents to an adoption, upon petition by the intermediary or, where there is no intermediary, by the adoptive parent, the court shall hold a hearing for the purpose of confirming a consent to an adoption upon expiration of the time periods under section 2711 (relating to consents necessary to adoption). The original consent or consents to the adoption shall be attached to the petition.

**(b)** **Hearing.—**Upon presentation of a petition filed pursuant to this section, the court shall fix a time for a hearing which shall not be less than ten days after filing of the petition. Notice of the hearing shall be by personal service or by registered mail or by such other means as the court may require upon the consenter and shall be in the form provided in section 2513(b) (relating to hearing). Notice of the hearing shall be given to the other parent or parents, to the putative father whose parental rights could be terminated pursuant to subsection (c) and to the parents or guardian of a consenting parent who has not reached 18 years of age. The notice shall state that the consenting parent's or putative father's rights may be terminated as a result of the hearing. After hearing, which shall be private, the court may enter a decree of termination of parental rights in the case of a relinquishment to an adult or a decree of termination of parental rights and duties, including the obligation of support, in the case of a relinquishment to an agency.

23 Pa.C.S.A. § 2504(a) and (b).

Further, Section 2711 of the Adoption Act provides in pertinent part as follows:

**§ 2711.  Consents necessary to adoption**

**(a)  General rule.**—Except as otherwise provided in this part, consent to an adoption shall be required of the following:

* * *

(3)  The parents or surviving parent of an adoptee who has not reached the age of 18 years.

* * *

**(c) Validity of consent.—**  …  **A consent to an adoption may only be revoked as set forth in this subsection**.  The revocation of a consent **shall be in writing** and shall be served upon the agency or adult to whom the child was relinquished.  The following apply:

(1)  Except as otherwise provided in paragraph (3):

* * *

(ii)  For a consent to an adoption executed by a birth mother, **the consent is irrevocable more than 30 days after the execution** of the consent.

(2)  An individual may not waive the revocation period under paragraph (1).

(3)  Notwithstanding paragraph (1), the following apply:

(i)  An individual who executed a consent to an adoption **may challenge the validity of the consent only by filing a petition alleging fraud or duress** within the earlier of the following time

frames:

> > (A)  **Sixty days after** the birth of the child or the **execution** of the consent, whichever occurs later.

> > \*    \*    \*

> (ii)  A consent to an adoption may be invalidated **only if** the alleged fraud or duress under subparagraph (i) is proven by:

> > (A)  a preponderance of the evidence in the case of consent by a person 21 years of age or younger; or

> > (B)  clear and convincing evidence in all other cases.

**(d)  Contents of consent.—**

(1)  The consent of a parent of an adoptee under 18 years of age shall set forth the name, age and marital status of the parent, the relationship of the consenter to the child, the name of the other parent or parents of the child and the following:

I hereby voluntarily and unconditionally consent to the adoption of the above named child.

I understand that by signing this consent I indicate my intent to permanently give up all rights to this child.

I understand such child will be placed for adoption.

I understand I may revoke this consent to permanently give up all rights to this child by placing the revocation in writing and serving it upon the agency or adult to whom the child was relinquished.

> \*    \*    \*

If I am the birth mother of the child, I understand that this consent to an adoption is irrevocable unless I revoke

it within 30 days after executing it by delivering a written revocation to (insert the name and address of the agency coordinating the adoption) or (insert the name and address of an attorney who represents the individual relinquishing parental rights or prospective adoptive parent of the child) or (insert the court of the county in which the voluntary relinquishment form was or will be filed).

I have read and understand the above and I am signing it as a free and voluntary act.

(2)     The consent shall include the date and place of its execution and names and addresses and signatures of at least two persons who witnessed its execution and their relationship to the consenter.  …

(3)     In lieu of two witnesses a consent may be acknowledged before a notary public.

23 Pa.C.S.A. § 2711 (internal emphasis added).  Thus, Section 2711 describes the timeline for revocation of a consent to adoption, as well as a challenge to its validity.  *Id.*  Significantly, the trial court may not consider the substantive merits of a revocation if such revocation is untimely.  ***In re Adoption of J.A.S.***, 939 A.2d 403, 408-09 (Pa.Super. 2007), *appeal denied*, 598 Pa. 750, 954 A.2d 577 (2008).

Instantly, at the conclusion of the January 25, 2021 hearing, the trial court addressed Mother's issues as follows:

I make the finding that there was no fraud in the inducement with regard to [Mother's] execution of this consent, that there would have been an extensive colloquy with her and she would have indicated under oath to the [c]ourt that this was her determination and decision.

There was no intent on behalf of anyone to mislead her at the time she executed the consent and the colloquy was

- 10 -

held. There can always be a change in circumstances following somebody's execution of Consent, or anything that involves children.

So, to me, the relevant time frame is at the time of the Consent and approval. So, the fact that — and at [the] time there was the idea that [C]hildren would be adopted by [foster mother]. Circumstances change, and part of the circumstances is the conduct of one of …[C]hildren. I don't believe that that has rendered [I.G.] an orphan. Even as you go through an adoption proceeding, circumstances may change. There are even adoptions that go through and then a parent may find the circumstances necessitate them to undo the adoption.

So, [CYS] is acting reasonably and in good faith with regard to permanency family. The family was previously approved, so it's just some mere paperwork with regard to having a permanency adoption take place for [I.G.], and it is with other family. It is with her brothers.[4] So I don't accept the argument that she is somehow being rendered an orphan here. So, I reject [Mother]'s… arguments and the Motions in relation thereto. The consent was freely and voluntarily given. There was no fraud involved at that time. The fact that it is now untimely, it cannot be withdrawn. So, I will execute the appropriate decrees relative to the consent and termination of her parental rights with regard to these three girls at this time. That's all.

(N.T. Hearing, 1/25/21, at 38-39). We agree with the trial court's analysis.

Here, Mother signed the consent to relinquish her parental rights to Children on September 28, 2020. Ninety-eight days later, on January 4, 2021, Mother filed a petition to revoke the voluntary relinquishment after discovering

---

[4] As the guardian *ad litem* explains in her brief, "The current permanency plan for minor I.G. is 'Subsidized Permanent Legal Custodianship' in the home of her younger brothers; though not girls, they are siblings all the same." (Guardian *Ad Litem*'s Brief at 5).

the foster family no longer wished to adopt I.G. Thus, Mother's petition was patently untimely, even under the expanded sixty-day period for allegations of fraud or duress. *See* 23 Pa.C.S.A. § 2711(c)(3)(i)(A). Furthermore, the trial court conducted a lengthy colloquy prior to Mother signing the consent to adoption. During the colloquy, Mother conceded that no promises or threats had been made to encourage her consent. Notably, there was no mention of any agreement stating that Mother's consent was contingent on Children being adopted together. Thus, Mother's petition is untimely, and her claims of fraud and duress are meritless. *See* 23 Pa.C.S.A. § 2711; *In re Adoption of J.A.S., supra*.

Finally, Mother's assertion that the court's decision renders I.G. a "legal orphan" is inaccurate, where "[t]here is no dispute that [CYS] was the custodian, with both legal and physical custody of …Children" and "[t]here is no evidence that CYS would relinquish custody of …Children (*i.e.* foster care) or any one of them before such time as any of them are adopted or placed in a subsidized permanent legal custodianship." (Trial Court Opinion, filed March 26, 2021, at 3). Therefore, Mother's issues merit no relief.[5] *See In re C.M.C., supra*. Accordingly, we affirm.

Decrees affirmed.

---

[5] *In re J.W.B.*, on which Mother relies, is distinguishable. There, the father argued that his execution of the consent document did not constitute a legally valid consent and was void *ab initio*. Thus, the issue in that case did not involve revocation of a consent, but whether there was a legal consent at all.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2021