J-S27032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1097 EDA 2022 |

Appeal from the Order Entered March 24, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000826-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: L.A.W., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1098 EDA 2022 |

Appeal from the Decree Entered March 24, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000136-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1099 EDA 2022 |

Appeal from the Order Entered March 24, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000922-2019

| IN THE INTEREST OF: M.O.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1100 EDA 2022 |

Appeal from the Decree Entered March 24, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000135-2021

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED DECEMBER 15, 2022**

J.G. ("Mother") appeals from the decrees granting her petitions to voluntarily terminate her parental rights to her children, L.W., a/k/a L.A.W., Jr. (born in 2011) and M.W., a/k/a M.O.W. (born in 2016) (collectively "Children"), and the orders changing the Children's permanency goals to adoption. We affirm.

The trial court summarized the relevant factual and procedural history as follows:

> [] The Philadelphia Department of Human Services ("DHS") first became involved with this family in 2015 due to concerns for the Children's safety and parent's drug activity. (DHS Petition[,] 3/14/2021[,] Exhibit A ¶¶a—d). DHS became involved again in 2018 due to allegations it received regarding L.W.'s behavior and attendance at school and concerns that he was being neglected. (*Id*. at ¶¶g-l). DHS filed a dependency petition on March 16, 2019, and L.W. was adjudicated dependent on May 31, 2019. (*Id*. at ¶¶t, w). M.W. was subsequently adjudicated dependent on June 7, 2019. (*Id*. at ¶¶x, dd).
>
> In August of 2020, Mother went to the Community Umbrella Agency ("CUA")-5 Turning Points for Children office to sign

voluntary relinquishment of parent rights for both Children. (DHS Memorandum of Law[,] 4/13/2022[,] at 1). The CUA Case Manager, Natasha Triplett, did not allow Mother to sign as Mother appeared to be under the influence. (***Id***.). DHS filed goal change petitions for both Children on March 9, 2021. (***Id***. at 2). Mother again went to the CUA agency to sign voluntary relinquishment of parental rights and confirm consent petitions . . . on March 17, 2021. (***Id***.). At this time, Mother did not appear to be under the influence and was permitted to sign the petitions. (***Id***.; N.T.[,] 3/24/2022[,] at 6-7). The petitions were filed with the trial court on August 25, 2021.

The relevant hearing to confirm Mother's voluntary relinquishment and confirm consents was held on March 24, 2022. Mother attended the hearing via video-teleconference. Ms. Triplett testified that she witnessed Mother sign the petitions and that Mother did not appear to be under the influence and appeared to be of sound mental state. ([***Id***.] at 6-7). [Ms. Triplett] further testified that Mother reads, writes, and understands the English language and that Mother read the petitions in their entirety prior to signing. (***Id***.). She testified that Mother was not bribed, coerced, or promised anything in exchange for her signature, and appeared to make a knowing, willing, and intelligent signature, and acted in her own free will. (***Id***.). [Ms. Triplett] also testified that she informed Mother that she had thirty days to revoke. (***Id***.). Mother also testified at the March 24, 2022 hearing. Mother testified that she remembered signing the petitions at the CUA agency and that she had discussed the petitions with her attorney prior to signing. (***Id***. at 13-14). Mother also testified that she was not under the influence at the time of signing, that she was of sound mind, and that she could read, write, and understand the English language. (***Id***.). She further testified that she believed it was in the Children's best interests for her to voluntarily relinquish her parental rights. (***Id***. at 15).

At the conclusion of the hearing, th[e] court issued . . . decree[s] granting Mother's petition[s] to voluntarily terminate her parental rights[.] (***Id***. at 16; Trial C[ourt] Order[,] 03/24/2022). [The court also entered orders changing the Children's permanency goals to adoption.]

Trial Court Opinion, 6/2/22, at 1-3 (unnecessary capitalization omitted).

Mother filed timely notices of appeal of the decrees and orders, and both she and the trial court complied with Pa.R.A.P. 1925.[1] This Court consolidated Mother's appeals *sua sponte*.

Mother raises the following issues for our review:

1. Did Mother knowingly, voluntarily, and intelligently relinquish her parental rights?

2. Did the trial court error [*sic*] by granting the termination decree which purported to voluntarily terminate Mother's parental rights[?]

Mother's Brief at 4.[2]

We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse

---

[1] Mother filed identical concise statements of errors complained of on appeal at each docket.

[2] Although Mother purports to raise two issues for our review, she does not identify or discuss her second issue in the argument section of her brief. Therefore, it is waived. **See** Pa.R.A.P. 2119(a) (providing that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent); **see also Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa. Super. 2006) (holding that "[a]ppellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention.").

of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Chapter 25 of the Pennsylvania Adoption Act, 23 Pa.C.S.A. § 2101 *et seq.*, governs the voluntary relinquishment of parental rights and provides two alternative procedures for such relinquishment. First, the parent may file a petition to relinquish parental rights pursuant to section 2501 (relinquishment to agency) or section 2502 (relinquishment to adult intending to adopt the child). Alternatively, the agency or adoptive parent may file a petition to confirm a birth parent's consent to adoption under section 2504 (alternative procedure for relinquishment). Pursuant to 23 Pa.C.S.A. § 2711, a parent's consent to adoption executed pursuant to section 2504 is irrevocable more than thirty days after the execution of the consent, and the signer may only challenge the consent by filing a petition alleging fraud or duress within sixty days after the birth of the child or the execution of the consent, whichever occurs later, or thirty days after the entry of the adoption decree. *See* 23 Pa.C.S.A. § 2711(c).

In the instant matter, the parties ultimately proceeded under section 2501, which provides:

**(a) *Petition.* —** When any child under the age of 18 years has been in the care of an agency for a minimum period of three days or, whether or not the agency has the physical care of the child, the agency has received a written notice of the present intent to transfer to it custody of the child, executed by the parent, the parent or parents of the child may petition the court for permission to relinquish forever all parental rights and duties with respect to their child.

**(b) *Consents.* —** The written consent of a parent or guardian of a petitioner who has not reached 18 years of age shall not be required. The consent of the agency to accept custody of the child until such time as the child is adopted shall be required.

23 Pa.C.S.A. § 2501.

Pursuant to the procedures set forth in section 2501, the natural parent first files a petition in the trial court seeking permission to permanently relinquish his or her parental rights to the minor child. ***See In re C.M.C.***, 140 A.3d 699, 708-09 (Pa. Super. 2016). Upon presentation of a petition prepared pursuant to section 2501, the court must schedule a hearing which shall not be less than ten days after filing of the petition. ***See*** 23 Pa.C.S.A. § 2503(a). The petitioner's appearance at the hearing is mandatory, and the petitioner's in-court ratification of consent assures due process requirements in view of the finality of the termination decree as to the parent. ***See In re C.M.C.***, 140 A.3d at 709 (citing 23 Pa.C.S.A. § 2503(a) cmt.). The purpose of a hearing on a petition for voluntary relinquishment is to insure an intelligent, voluntary, and deliberate consent to the termination of parental rights. ***Id***. at 711. The consent given to terminate parental rights voluntarily must be clear and unequivocal. ***Id***. After a hearing, which shall be private, the court may enter

a decree of termination of parental rights and duties, including the obligation of support, in the case of their relinquishment to an agency. *See* 23 Pa.C.S.A. § 2503(c). A party seeking to disturb a voluntary termination decree must show that the consent given to terminate parental rights was not intelligent, voluntary, and deliberate. *See In re C.M.C.*, 140 A.3d at 711.

Mother argues that she testified on direct examination that when signing the petitions, she was "kind of confused because when I made the petition, it said that I was impaired; but then again, I was not granted to sign the petition because I was impaired, but I do recall signing the voluntary rights." Mother's Brief at 9 (quoting N.T., 3/24/22, at 14). Mother maintains that her testimony explicitly states that she was impaired at the time of signing. Mother asserts that such impairment is directly contrary to the settled case law which indicates that in order to voluntarily relinquish parental rights; the parent must do so knowingly and intelligently. Mother claims that her testimony was not impeached or contradicted by any other witnesses or evidence. Mother maintains that she did not knowingly and intelligently understand the nature of the rights that she purported to relinquish.[3]

---

[3] We observe that in her concise statements, Mother claimed only that she did not voluntarily relinquish her parental rights to the Children. Mother did not raise any claim that she did not knowingly or intelligently relinquish her parental rights to the Children. While we could find waiver on this basis, we decline to do so and instead conclude that the latter claims are fairly suggested by Mother's preserved issue. *See* Pa.R.A.P. 1925(b)(4)(v) (providing that
*(Footnote Continued Next Page)*

- 7 -

The trial court considered Mother's first issue and determined that it lacked merit. The court reasoned:

> This court found that Mother's relinquishment was voluntary, intelligent, and deliberate. The CUA Case Manager, as well as Mother's own testimony, presented clear and convincing evidence that Mother voluntarily, intelligently, and deliberately relinquished her parental rights. Both Mother and the CUA Case Manager testified that Mother was not under the influence when she signed the petition[s] and was of sound mind at the time of signing. (N.T.[,] 3/24/2022[,] at 14, 7). The CUA Case Manager further testified that no one coerced, bribed, or promised Mother anything in exchange for her signature and that Mother appeared to understand what she was signing, and made a knowing, willing, and intelligent signature. (*Id*. at 7). Additionally, Mother testified that she discussed the petition[s] to for [*sic*] voluntary termination of parental rights with her counsel prior to signing and that she believed it was in her Children's best interests to do so. ([*Id*.] at 13-15). Therefore, this court found Mother's consent to be voluntary, intelligent, and deliberate.

Trial Court Opinion, 6/2/22, at 5 (unnecessary capitalization omitted).

We discern no abuse of discretion or error of law by the trial court. Our review of the record reveals that, although Mother signed petitions to voluntary relinquish her parental rights to the Children and petitions to confirm her consent to adoption on March 17, 2021, CUA withdrew the petitions to confirm consent because Mother appeared at the March 24, 2022 hearing via teleconference. Thus, rather than proceeding pursuant to sections 2504 and

_____

"[e]ach error identified in the Statement will be deemed to include every subsidiary issue . . ..").

2711, the parties proceeded with Mother's petitions to voluntarily relinquish her parental rights pursuant to section 2501.[4]

As of the date of the hearing on March 24, 2022, the Children had been in care for approximately two and one-half years. The CUA caseworker, Ms. Triplett, testified that she witnessed Mother sign the petitions on March 17, 2021, and that Mother did so after reading them in their entirety. *See* N.T., 3/24/22, at 6-7. Ms. Triplett further testified that Mother did not appear to be under the influence of any substances and that she was not bribed, coerced, or promised anything in exchange for her signature. *Id*. at 7.

The only evidence presented that Mother did not knowingly execute the confirm consent petitions and the petitions to voluntarily terminate her parental rights is Mother's initial testimony. When asked whether she disagreed with any aspect of Ms. Triplett's testimony, Mother stated:

> Q: Okay. Was there anything in her [Ms. Triplett's] testimony that you disagree with in terms of your condition when you signed the vols?
>
> A: There's nothing that I – well, to be honest, I was kind of confused because when I made the petition, it said that I was impaired, but then again, I was not granted to sign the petition because I was impaired, but do recall signing the voluntarily [*sic*] rights.

---

[4] Even if the parties had proceeded pursuant to sections 2504 and 2711, Mother would be due no relief, as Mother signed the confirm consents on March 17, 2021, nearly one year before the March 24, 2022 hearing. At no point during this period did Mother attempt to revoke her consent, nor did she allege fraud or duress.

N.T., 3/24/22, at 13-14.

Mother's counsel then elicited the following testimony from Mother which clarified her belief that she was not impaired when she signed the voluntary relinquishment petitions and believed when she signed the petitions and at the time of the hearing that it was in the Children's best interests to relinquish her parental rights:

> Q: Okay. And prior to that time [of signing], did you and I discuss [the voluntary relinquishment petitions]?
>
> A: Yes.
>
> Q: Okay. At the time you signed, were you under the influence of a substance?
>
> A: No, ma'am.
>
> Q: At the time you signed, were you of sound mind?
>
> A: Yes.
>
> * * * *
>
> Q: Okay. At the time you signed, did you believe it was in your [C]hildren's best interest for you to do that?
>
> A: At that point, I did, yes.
>
> Q: Okay. At this time do you still believe it's in your [C]hildren's best interest?
>
> A: Yes. I'm a little – yes. Yes.
>
> Q: Okay. At the time you signed, do you believe you had been working toward reunification prior to signing?
>
> A: Yes, ma'am.
>
> Q: Okay. And even so, at that time you believed it was in your

[C]hildren's best interest, correct?

A: Yes.

N.T., 3/24/22, at 13-15.

The trial court heard the testimony of both Ms. Triplett and Mother and determined that Mother voluntarily, knowingly, and intelligently signed the voluntary termination petitions on March 17, 2021. We are bound by the trial court's findings of fact and credibility determinations where, as here, they are amply supported by the record. *See In re T.S.M.*, 71 A.3d at 267. Accordingly, Mother's first issue warrants no relief.

As explained above, Mother waived her second issue by failing to identify or discuss it in her brief. *See* Rule 2119(a); *see also Lackner*, 892 A.2d at 29-30.

We further observe that, although Mother filed appeals from the orders changing the Children's permanency goals to adoption, Mother has not developed any argument pertaining to those orders. *See* Rule 2119(a); *see also Lackner*, 892 A.2d at 29-30. Nevertheless, given our affirmance of the orders terminating Mother's parental rights, any challenge to the orders changing the Children's permanency goals is moot. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) (concluding that a goal change challenge is moot in light of affirmance of a decree terminating parental rights). Thus, we affirm the decrees terminating Mother's parental rights to

the Children, and dismiss Mother's appeals from the orders changing the Children's permanency goals as moot.

Decrees affirmed; appeals from the goal change orders dismissed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 12/15/2022*